CHASEZ, Judge.
This is a workman’s compensation suit in which the defendant-appellant, Lumber-mens Mutual Casualty Company (Lumber-mens), has appealed from a judgment awarding plaintiff-appellee, Garland M. Anderson, $4,680.00, with legal interest on each past due payment from its due date until paid, with a penalty in the amount of 12% of all compensation due and attorney’s fees in the amount of $1,500.00.
Garland M. Anderson is employed by the defendant, Marion Plumbing Company, Inc., as a manager and supervisor. The greater portion of his work is supervisory, *301 although at times in order to repair equipment or to show his men how to do a particular job he does perform physical labor work. While so working on November 11, 1966 his left hand was caught in the fan of a welding machine and he suffered lacerations and fractures to his left hand. The injury was described by plaintiff’s physician as:
“1. Wounds, lacerated, multiple, contaminated, dorsal aspect, index, ring and little fingers.
“2. Wounds, lacerated, multiple, dorsal aspect, hand, left.
“3. Fracture, open, proximal phalanx, index finger, left.
“4. Fracture, open, comminuted, proximal phalanx, little finger, left.
“5. Wounds, lacerated, multiple, ex-tensor tendons, left.”
His left hand was in bandages and splints for approximately six weeks and he was treated by his physician, Dr. Hammond Newman, an orthopedist, for about one year thereafter, until January 11, 1968, when Dr. Newman issued his final medical report on the injuries sustained by Anderson. In that report he stated Anderson had reached his maximum recovery and that he would sustain a permanent partial disability of twenty percent to his left hand.
Mr. Anderson’s injury was not related to his primary duties as supervisor-manager and he returned to the performance of his job two weeks after the accident. This suit is not for weekly compensation benefits, but for specific loss or impairment of function of his left hand.
There is no question but that there was an accident arising out of the scope of employment. Defendants argue that plaintiff’s claim has prescribed under LSA-R.S. 23:1209 because suit was filed more than one year after the accident.
Defendants have assigned as error the failure to sustain defendants’ exception of prescription, the accepting of the estimate of 20% disability by the treating orthopedist over that of a 10% estimate of disability by an examining orthopedist who specializes in hands; and finally that it was error to award plaintiff penalties and attorney’s fees.
With regard to the exception of prescription, the chronology is that the accident occurred on November 11, 1966; the final report of Dr. Newman was on January 11, 1968; suit was filed on September 30, 1968. Plaintiff argues that the one year prescription is not applicable because although the accident occurred more than one year prior to his filing suit, it was not until January 11, 1968 that he knew with medical certainty that there would be permanent disability to his left hand. He therefore claims that the injury developed within a year prior to his filing suit and that his claim is, thus, not prescribed under LSA-R.S. 23-1209. This statute provides as follows:
“In case of personal injury (including death resulting therefrom) all claims for payments shall be forever barred unless within one year after the accident or death the parties have agreed upon the payments to be made under this Chapter or unless within one year after the accident proceedings have been begun as provided in Parts III and IV of this Chapter. Where such payments have been made in any case, the limitation shall not take effect until the expiration of one year from the time of making the last payment. Also, where the injury does not result at the time of, or develop immediately after the accident, the limitation shall not take effect until the expiration of one year from the time the injury develops, but in all such cases the claim for payment shall be forever barred unless the proceedings have been begun within two years from the date of the accident.”
*302 Dr. Hammond Newman, plaintiff’s orthopedist, testified that from the time of the injury on November 11, 1966 until the date of the final report on January 11, 1968 he did not tell plaintiff that he would have any permanent loss of use of his hand. He testified also that it usually takes approximately a year after an injury of this type to tell whether there will be any loss of function because some injuries heal more completely than others and some people regain more function of the injured members than others.
Mr. Anderson testified that the doctor did not tell him prior to January 11, 1968 that he would have a permanent loss of function of his hand. He stated that, “[t]he doctor always told me that there was a possibility of full recover (sic) ? We had talked about it and he said that time would tell.”
It would be conjectural on our part to say that the injury in this case (the loss of function) could be determined with any certainty prior to the final report of January 11, 1968. Until this time the plaintiff had been under treatment by his doctor and it was at this time that the doctor stated that the hand had reached a maximum state of recovery.
The general rule is announced by Professor Wex Malone in his treatise on Workman’s Compensation, where he makes the statement:
“The delayed symptoms rule is likewise applicable where the claim is for a specific loss, rather than for disability benefits. An injury to the thumb, for instance, may appear initially to be only slight and temporary, but as time is allowed for the healing process it becomes apparent that there is a permanent loss of the use of the member. In such cases it is sufficient that suit be instituted within a year from the time the permanent or residual condition was definitely determined.” Malone, Louisiana Workmen’s Compensation, 1964 Supplement, Section 384, page 211.
A case similar to the one at bar is Marie v. Dennis Sheen Transfer, Inc., La.App., 134 So.2d 407 (4th Cir. 1961). In that case the plaintiff suffered a broken left thumb on June 7, 1957. On July 18, 1957 the cast was removed and the doctor next saw him on August 7, 1957. The court made the following statement:
“When the doctor next saw him on August 7, 1957, he found that healing was taking place with shortening of the thumb. The plaintiff testified that the doctor spoke of this defect in position at that time but thought that the shortening would correct itself. The next X-ray was made on November 11, 1957, at which time the fracture was completely healed. It was at this time that the doctor first determined that the abnormality resulting from the position of the thumb would be permanent. The plaintiff was informed of this situation but the doctor did not make a formal report of the residual or permanent disability until April 9, 1958. This report was based on the X-ray made in November, 1957. The compensation claim was filed in the suit on September 19, 1958, which was well within the year after the time the permanent or residual condition was definitely determined.”
See also Mottet v. Libbey-Owens-Ford Glass Co., 220 La. 653, 57 So.2d 218 (1952).
In light of the jurisprudence the plea of prescription of one year was properly overruled. The two year preemptive period had not run at the time of filing suit and it is, therefore, inapplicable.
With regard to appellant’s second assigned error that the trial court erred in accepting the treating physician’s estimate of 20% disability rather than the examining physician’s estimate of 10%, we can only state that this was a finding of fact by the trial judge and we have no substantial basis on which to say this finding of the trial court was erroneous. Therefore, *303 this finding of the court a quo will not be disturbed by us.
The last assignment of error of appellants, that of the award for 12% penalties and attorney’s fees, poses a mpre serious problem.
The trial court awarded 12% penalty on all compensation due and $1,500.00 as attorney’s fees because as the court stated, “the insurance company has not lived up to its obligations in this matter.” The trial court based this finding primarily on the fact that the insurance company never offered more than $1,500.00 in settlement when, according to their physician, the loss to the hand was 10% and, applying the wage formula, this would amount to about $2,500.00 as a minimum amount for which they would be liable.
The record reflects that between the accident on November 11, 1966 and January 11, 1968, the date of the final report, no demand was made by the plaintiff. The insurance company paid all of plaintiff’s medical expenses through April 17, 1968.
As was previously stated, the final report of Dr. Newman as to permanent disability was on January 11, 1968. On March 13, 1968 defendant had Mr. Anderson examined by its physician for his opinion as to residual disability. In April of 1968 an adjuster for Lumbermens offered Mr. Anderson $1,000.00 as a settlement, which offer was later increased to $1,250.-00 and then later to $1,500.00, all of which offers were refused by Mr. Anderson. On about April 12, 1968 Mr. Anderson offered to accept $2,500.00 in compromise settlement, which was rejected by Lumbermens.
On May 2, 1968 a letter of representation was sent by plaintiff’s counsel to defendant, in which no demand was made. In a letter of August 9, 1968, Mr. Anderson, through counsel, offered to accept $3,900.00 in compromise of the claim. This offer was rejected by Lumbermens in a letter of August 21, 1968 with a notation that the claim had prescribed. On August 29, 1968 plaintiff made a final demand of $5,250.00 and suit was filed on September 30, 1968.
The action of Lumbermens from the time of the injury until the time the disability became certain cannot be considered as arbitrary or capricious. If the injury had not manifested itself to the extent that prescription had begun to run prior to that date, then surely the same logic should apply to the insurer for not making any payment for disability. If plaintiff could not file an intelligent pleading because he did not know the extent of his injury, then the insurer could not make an intelligent offer for the same reason.
Plaintiff’s physician, an orthopedist, estimated the disability to be 20%, while defendant’s physician, also an orthopedist, estimated the disability to be 10%, which obviously means there was a dispute as to the extent of plaintiff’s disability. As was previously stated, plaintiff made no demand until after defendant’s third offer in April of 1968. Under these circumstances an attempt by Lumbermens to compromise the claim cannot be said to be arbitrary or capricious.
For these reasons the award of 12% penalties and $1,500.00 attorney’s fees for arbitrary and capricious conduct on the part of Lumbermens will be reversed.
For the foregoing reasons, that portion of the judgment in favor of the plaintiff, Garland M. Anderson, and against defendant, Lumbermens Mutual Casualty Company, in the full sum of $4,680.00, together with legal interest on each past due payment from its due date until paid is affirmed. The judgment insofar as it awarded 12% of all compensation paid as a penalty, together with attorney’s fees in the amount of $1,500.00, is reversed. The judgment in all other respects is affirmed. All costs of this suit to be paid by defendant-appellant.
Affirmed in part, reversed in part and rendered.